UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DONNA DENNISON, CATHERINE GEBERT,
and SHANNON COTA,

                              Plaintiffs,

     - against -

BON SECOURS CHARITY HEALTH SYSTEM
MEDICAL GROUP, P.C., and WESTCHESTER
MEDICAL CENTER HEALTH NETWORK,

                              Defendants.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 22-CV-2929 (CS)

Appearances:

Steven M. Warshawsky
The Warshawsky Law Firm
Mount Kisco, New York

Andrea Paparella
Law Office of Andrea Paparella, PLLC
Salem, Massachusetts
*Counsel for Plaintiffs*

Michael J. Keane
Marc A. Sittenreich
Vasilios D. Lolis
Garfunkel Wild, P.C.
Great Neck, New York
*Counsel for Defendants*

Seibel, J.

     Before the Court is the motion to dismiss of Defendants Bon Secours Charity Health System Medical Group, P.C. ("Bon Secours") and Westchester Medical Center Health Network, ("WMCHealth"), (collectively, "Defendants"). (ECF No. 31.) For the following reasons, the motion is GRANTED.

I. **BACKGROUND**

I accept as true the facts, but not the conclusions, set forth in Plaintiffs' Second Amended Complaint. (*See* ECF No. 20 ("SAC").)

A. **Facts**

Donna Dennison, Catherine Gebert, and Shannon Cota (collectively, "Plaintiffs") are registered nurses ("RN"s) who were employed by Bon Secours, which is a member of WMCHealth. (SAC ¶¶ 18-20, 24, 49-51, 55, 78-80, 84.) All three Plaintiffs worked as patient-facing nurses at hospitals or facilities that are part of Bon Secours: Dennison as a part-time cardiac care nurse at Good Samaritan Hospital, Gebert as a per diem infusion/chemotherapy nurse at Goshen Medical Associates, and Cota as a part-time outpatient oncology infusion nurse at Goshen Medical Associates. (*Id.* ¶¶ 25, 56, 85.) All three Plaintiffs allege they were qualified for their positions and performed their duties in a satisfactory manner. (*Id.* ¶¶ 26, 57, 86.)

On August 13, 2021, WMCHealth informed all employees that it was implementing a mandatory COVID-19 vaccination policy, under which "all workforce members, regardless of location, [had] to be fully vaccinated against COVID-19 by September 30, 2021," and any employee who did not comply would be immediately suspended without pay for up to 30 days and then terminated. (*Id.* ¶¶ 27, 58, 87.) The policy also allowed for "limited medical and/or religious exemptions," although it did not explain the scope of the exemptions or the criteria for granting them. (*Id.* ¶¶ 28, 59, 88.)

On August 26, 2021, New York State's Department of Health ("DOH") adopted an emergency rule (the "State Mandate") requiring "[c]overed entities," such as hospitals and other specified healthcare entities, to require their "personnel" to be fully vaccinated against COVID-19 by September 27, 2021. (*Id.* ¶ 108 (citing *We the Patriots, Inc. v. Hochul (We The Patriots I)*,

17 F.4th 266, 274 (2d Cir.), *clarified*, 17 F.4th 368 (2d Cir. 2021), *cert. denied sub nom. Dr. A. v. Hochul*, 142 S. Ct. 2569 (2022), and N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61).) "Personnel" was defined to include "members of the medical and nursing staff . . . who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease." N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61(a)(2). The State Mandate allowed for a medical exemption where the vaccine would be detrimental to the employee's health, only until immunization was no longer detrimental, *id.* § 2.61(d), but did not mention religious exemptions, (SAC ¶¶ 109-11, 114).

On September 6, 2021, Gebert submitted an application for a religious exemption based on her sincerely held religious beliefs that her "body belongs to God and is the temple of his Holy Spirit" and her pro-life opposition to abortion. (*Id.* ¶¶ 60-61.) The next day, she received an email that said WMCHealth "will no longer accept applications for a religious exemption" and that "all members of the workforce are reminded that they must be fully vaccinated by September 30, 2021." (*Id.* ¶ 62.) At an unspecified time, subsequent legal proceedings allegedly caused WMCHealth to resume consideration of applications for religious exemptions. (*Id.* ¶ 63.)

On September 14, 2021, Cota submitted her application for a religious exemption based on her sincerely held religious beliefs that "God created [her] in a physical condition that is perfect in his sight, so [she] do[es] not have the right to tamper with that creation," and that "human life begins at conception and using products from manufacturers engaged in aborted fetal research and vaccine production is wrong." (*Id.* ¶ 90.) On September 24, 2021, for unrelated reasons, Cota went on approved short-term disability leave. (*Id.* ¶ 91.) Three days later, her supervisor allegedly left her a voice message that her application for a religious

3

exemption had been approved, but Cota never received written confirmation from her supervisor or Human Resources ("HR").  (*Id.* ¶ 92.)

On September 22, 2021, Dennison submitted an application for a religious exemption based on her sincerely held religious beliefs that "as a born again Christian I am to be led by the Holy Spirit and what he speaks to my heart in regards to my body, and I will not defile my body with a vaccine that has not been proven safe for my body."  (*Id.* ¶¶ 29-30.)  In her application, she included a statement from the senior pastor at her church.  (*Id.* ¶ 31.)  That same day, she received an email acknowledging receipt of her request and informed her that her application "will be reviewed."  (*Id.* ¶ 32.)

On September 29, 2021, Dennison received and counter-signed a letter from Jordy Rabinowitz, Senior Vice President of HR for WMCHealth, informing her that "while on an approved or pending medical/religious exemption," employees must be tested for COVID-19 twice a week and wear a N95 mask at all times while indoors at any WMCHealth facility, and that "failure to adhere or cooperate with any of the above requirements w[ould] result in immediate termination of [their] employment."  (*Id.* ¶¶ 33-34.)

On October 11, 2021, Dennison, Gebert, and Cota were individually informed via email that their "request[s] for a religious exemption for receipt of the COVID-19 vaccination [were] denied," without further explanation.  (*Id.* ¶¶ 35, 64, 93.)  All three Plaintiffs allege they either heard rumors or know of employees at WMCHealth facilities who had been granted exemptions, although they do not describe those individuals' positions or job duties.  (*Id.* ¶¶ 46, 75, 104.)

On October 28, 2021, Dennison and Gebert received letters from Rabinowitz terminating their employment, effective immediately, because they had "neither submitted proof of vaccination against COVID-19, nor applied for and been granted an exemption."  (*Id.* ¶¶ 47, 76.)

On or about November 8, 2021, Cota's supervisor told her that she would not be medically cleared to return to work from her disability leave without proof of COVID-19 vaccination, (*id.* ¶ 105), and on or about March 22, 2022, Cota received a letter from HR terminating her employment effective November 1, 2021, citing the same reasons as Dennison and Gebert, (*id.* ¶ 106).

Since June 2022, Dennison has worked as an RN at a non-profit organization in New York that serves people with developmental disabilities. (*Id.* ¶ 48.). Since January 2022, Gebert has worked per diem at a private healing center in New York, where she administers injections and IV infusions. (*Id.* ¶ 77.) Since November 2021, Cota has worked per diem administering injections and IV infusions for various entities, including at a mobile IV infusion company that works in New York and New Jersey, a hospital in New Jersey, and a multi-specialty medical practice in New York. (*Id.* ¶ 107.) All three Plaintiffs allege that they have not been required to receive the COVID-19 vaccine for their new jobs. (*Id.* ¶¶ 48, 77, 107.)

Plaintiffs allege that Defendants never engaged in the interactive process to determine whether their exemptions should be granted and never asked Plaintiffs for additional information about their religious beliefs or how they conflicted with the vaccination policy. (*Id.* ¶¶ 36-37, 65-66, 94-95.) Nor did Defendants question or deny the sincerity of Plaintiffs' objections to taking the vaccine. (*Id.* ¶¶ 38, 67, 96.) Plaintiffs further allege that Defendants never informed them that granting their exemptions would cause an undue hardship, and that granting the exemptions would not in fact have caused an undue hardship to Defendants' business. (*Id.* ¶¶ 39-40, 68-69, 97-98.) They allege that allowing them to continue to follow the protocols in place prior to Defendants' institution of the mandatory vaccination policy – namely, testing, masking, distancing, and sanitizing – would not have caused an unreasonable risk to patients or employees

because those protocols were adequate and effective in mitigating the risk of spreading COVID-19.  (*Id.* ¶¶ 41-44, 70-73, 99-102.)

On November 15, 2021, the DOH issued a "Dear Administrator Letter," (the "Letter") that said,

> Facilities should have a process in place to consider reasonable accommodation requests from covered personnel based on sincerely held religious beliefs consistent with applicable Federal and State laws, including Equal Employment Opportunity (EEO) laws such as Title VII of the Civil Rights Act and the NYS Human Rights Law, and their applicable guidance.

(*Id.* ¶ 124; *see id.* ¶¶ 120, 122-23.)  Plaintiffs allege that this Letter demonstrates that the DOH did not consider the State Mandate to be inconsistent with federal and state equal employment opportunity laws that allow for reasonable accommodations for employees' sincerely held religious beliefs, nor did DOH intend to limit or restrict how entities comply with their obligations under these laws.  (*Id.* ¶ 125.)  But the Letter, which I find to be incorporated by reference into the SAC, *see DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010); (*see also* SAC ¶ 124), also stated "that beginning **November 22, 2021**, all covered entities must ensure that covered 'personnel' under the Department's <u>August 26, 2021 – Prevention of COVID-19 Transmission by Covered Entities Emergency Regulation</u> who were previously granted religious exemptions have documentation of either a first dose COVID-19 vaccination or a valid medical exemption."  Letter from Jennifer L. Treacy, Deputy Dir., Off. of Primary Care & Health Sys. Mgmt. (Nov. 15, 2021) (available at https://www.health.ny.gov/professionals/hospital_administrator/letters/2021/docs/dal_21-11.pdf) (emphasis in original).  In other words, the Letter made clear that religious exemptions were unacceptable but that employers should consider reasonable accommodations for employees with sincerely held religious beliefs.

6

B.      **Procedural History**

Plaintiffs Dennison and Gebert filed their Complaint on April 8, 2022, asserting that Defendants, as joint employers, violated Title VII of the Civil Rights Act of 1964 ("Title VII") by refusing to grant their religious exemption requests and terminating them from their positions. (ECF No 1. ("Compl.") ¶¶ 64-69.)  Plaintiffs filed their Amended Complaint on April 19, 2022, adding Shannon Cota as a Plaintiff.  (ECF No. 7 ("AC") ¶¶ 66-90, 97-99.)

On June 21, 2022, Defendants requested a pre-motion conference in advance of their anticipated motion to dismiss, which the Court granted the same day.  (*See* ECF Nos. 16-17.)  At the conference on July 5, 2022, the Court granted Plaintiffs leave to amend their AC and set a briefing schedule.  (*See* Minute Entry dated July 5, 2022.)  The SAC was filed on July 21, 2022, and the instant motion followed.  (*See* ECF Nos. 31-35.)[1]

II.     **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

---

[1] On January 15, 2023, after the motion was fully briefed, Plaintiffs informed the Court of a decision by the Supreme Court of the State of New York, Onondaga County – *Med. Pros. for Informed Consent v. Bassett*, 185 N.Y.S.3d 578 (Sup. Ct. 2023) – that they believe impacts the pending motion to dismiss because it found that the State Mandate exceeded DOH's authority. (ECF No. 36.)  Defendants responded, arguing that the decision does not undercut their arguments.  (ECF No. 37.)  On March 3, 2023, Defendants informed the Court that the Appellate Division, Fourth Department had stayed enforcement of the Supreme Court's ruling in *Medical Professionals* pending appeal.  (ECF No. 38.)

On April 13, 2023, Plaintiffs requested the opportunity to conduct limited discovery before any decision on Defendants' motion, alleging they are in possession of "new evidence" that suggests that Defendants have granted religious exemptions to other patient-facing employees.  (ECF No. 39.)  Defendants opposed, (*see* ECF No. 41), and the Court denied Plaintiffs' request, finding good cause for a stay of discovery pending decision on the motion, (ECF No. 42).

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

## III.    DISCUSSION

### A.    Title VII of the Civil Rights Act of 1964

Plaintiffs allege that Defendants discriminated against them on the basis of their religion by refusing to grant their requests for religious exemptions to the mandatory COVID-19 vaccination policy, thereby violating Title VII's requirement that sincerely held religious beliefs be reasonably accommodated. (SAC ¶¶ 131, 134, 137.) Defendants argue that Plaintiffs' claims fail because these accommodations, if granted, would have imposed an undue hardship on Defendants as a matter of law because the accommodations would have required them to (1) violate the State Mandate, subjecting themselves to a penalty from DOH, and (2) compromise the health and safety of patients and employees. (ECF No. 33 ("Ds' Mem.") at 7-18.)

Title VII defines "religion" as including "all aspects of religious observance and practice, as well as belief," and imposes an obligation on an employer "to reasonably accommodate to an employee's . . . religious observance or practice" unless doing so would cause "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). Thus, "when an employee has a genuine religious practice that conflicts with a requirement of employment," the employer "must offer the aggrieved employee a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002). "An accommodation is said to cause an undue hardship whenever it results in more than a *de minimis* cost to the employer." *Baker v. Home Depot*, 445 F.3d 541, 548 (2d Cir. 2006).[3]

---

[3] The Supreme Court is currently considering the meaning of "*de minimis*" in the context of Title VII religious accommodation cases. *See Groff v. DeJoy*, 143 S. Ct. 646 (2023). The outcome of that case will not affect the result here, as the hardship alleged by Defendant would qualify even if the term is interpreted to mean more than minimal.

Accordingly, to state a claim for religious discrimination under Title VII for failing to accommodate, an employee must plausibly allege that she "'actually requires an accommodation of . . . her religious practice' and that 'the employer's desire to avoid the prospective accommodation was a motivating factor in an employment decision.'" *Lowman v. NVI LLC*, 821 F. App'x 29, 31 (2d Cir. 2020) (summary order) (quoting *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773-74 (2015)). If an employee has made out a *prima facie* case, "the burden then shifts to the employer to show it could not accommodate the employee['s] religious beliefs without undue hardship." *Knight v. Ct. Dept. of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001); *accord Baker*, 445 F.3d at 546; *see Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986) ("[A]n employer has met its obligation under [Title VII] when it demonstrates that it has offered a reasonable accommodation to the employee."). Although undue hardship is an affirmative defense, it may be raised on a pre-answer motion to dismiss when the facts establishing it are clear from the face of the complaint. *Lowman*, 821 F. App'x at 32; *Lowe v. Mills*, No. 21-CV-242, 2022 WL3542187, at *8 (D. Me. Aug. 18, 2022); *see Does 1-2 v. Hochul*, No. 21-CV-506, 2022 WL 4637843, at *15 (E.D.N.Y. Sept. 30, 2022).

Defendants do not dispute that all three Plaintiffs plausibly allege a *prima facie* case for religious discrimination under Title VII, but they argue that the accommodation sought by Plaintiffs – a blanket religious exemption from the COVID-19 vaccination requirement while continuing their employment as patient-facing nurses[4] – would have posed an undue hardship

---

[4] "Plaintiffs are asserting the right to be exempted from the COVID-19 vaccination requirement, which conflicts with their sincerely held religious beliefs, and to be allowed to continue their regular employment while following the same health and safety protocols – testing, masking, social distancing, and sanitizing – that were in place before the vaccination policy was announced." (ECF No. 34 ("Ps' Opp.") at 3.)

because it would have required Defendants to violate the State Mandate and face penalties from the DOH, and would have risked the health and safety of patients and other employees.

Title VII cannot be used to require employers to break the law. *See Bey v. City of N.Y.*, 999 F.3d 157, 170 (2d Cir. 2021) ("Title VII cannot be used to require employers to depart from binding federal regulations."); *Lowman*, 821 F. App'x at 31-32 (affirming dismissal of Title VII complaint where requested religious accommodation would cause employer undue hardship by forcing it to violate the law); *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830 (9th Cir. 1999) ("[C]ourts agree that an employer is not liable under Title VII when accommodating an employee's religious beliefs would require the employer to violate federal or state law."). When Defendants denied Plaintiffs' religious exemptions, the State Mandate required all "covered entities," like Defendants, to "continuously require personnel to be fully vaccinated against COVID-19," absent a medical exemption. N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61(c). Plaintiffs do not dispute that, as patient-facing nurses, they are "personnel" as defined in the regulation, and they do not suggest that they qualified for medical exemptions. Thus, Defendants would have violated the State Mandate had they granted the requested exemptions.[5]

---

[5] It is irrelevant that, at the time, a court in the Northern District of New York had temporarily enjoined DOH from "enforcing any requirement that employers deny religious exemptions from COVID-19 vaccination." *Dr. A v. Hochul*, No. 21-CV-1009, 2021 WL 4189533, at *1 (N.D.N.Y. Sept. 14, 2021); (*see* Ps' Opp. at 5). That a court had temporarily, and then preliminary, *see Dr. A v. Hochul*, 567 F. Supp. 3d 362 (N.D.N.Y. 2021), *vacated and remanded sub nom. We the Patriots USA, Inc. v. Hochul*, Nos. 21-2179, 21-2566, 2021 WL 5103443 (2d Cir. Oct. 29, 2021), enjoined enforcement does not mean employers were free, let alone required, to ignore the State Mandate. Were the rule otherwise, employers would be required to accurately predict the outcome of litigation in order to avoid liability for discrimination on the one hand, or liability for violating state law on the other. Indeed, the wisdom of complying with the State Mandate notwithstanding, the temporary relief was demonstrated by the Second Circuit's prompt vacatur of the injunction in *We the Patriots I*.

The Second Circuit in *We The Patriots I* held that while the State Mandate, "on its face, does not bar an employer from providing an employee with a reasonable accommodation that removes the individual from the scope of the Rule," it does bar religious exemptions.  17 F.4th at 292.  Plaintiffs here did not request remote work or some other arrangement that would have removed them from the definition of "personnel"; rather they wanted to remain within the scope of the State Mandate but get exempted from it.  But employees are not entitled to a "blanket religious exemption allowing them to continue working at their current positions unvaccinated." *Id.*  While "it may be *possible* under the [State Mandate] for an employer to *accommodate* – not *exempt* – employees with religious objections, by employing them in a manner that removes them from the [State Mandate]'s definition of 'personnel,'" *We The Patriots USA, Inc. v. Hochul* (*We The Patriots II*), 17 F.4th 368, 370 (2d Cir. 2021) (*per curiam*) (emphasis in original), *injunction denied*, 142 S. Ct. 2569 (2022) (mem.), Plaintiffs here did not seek such accommodations.[6]  By granting Plaintiffs' request – to exempt them from the vaccination requirement and allow them to continue in their positions as patient-facing nurses – Defendants would be violating the State Mandate, thus suffering an undue hardship.[7]

Courts in this Circuit have regularly dismissed Title VII claims brought by similarly situated Plaintiffs who sought blanket religious exemptions.  *See Corrales v. Montefiore Med.*

---

[6] Even if Plaintiffs had requested accommodations rather than exemptions, it is hard to imagine how Defendants could have accommodated them, given their roles as patient-facing nurses.

[7] Aside from the State Mandate, there is also the obvious hardship associated with the increased health and safety risk posed to other employees and patients by allowing Plaintiffs to remain unvaccinated while working at their respective facilities, *see Does 1-2*, 2022 WL 4637843, at *16; *D'Cunha v. Northwell Health Sys.*, No. 22-CV-988, 2023 WL 2266520, at *3 (S.D.N.Y. Feb. 28, 2023), and the risk of civil liability to anyone infected by an unvaccinated employee, *see Robinson v. Child.'s Hosp. Bos.*, No. 14-CV-10263, 2016 WL 1337255, at *8 (D. Mass. Apr. 5, 2016) ("Undue hardship can also exist if the proposed accommodation would either cause or increase safety risks or the risk of legal liability for the employer.").

*Ctr.*, No. 22-CV-3219, 2023 WL 2711415, at *7-8 (S.D.N.Y. Mar. 30, 2023) ("Montefiore could not have granted Corrales's requested exemption without undue hardship because granting the exemption would have required Montefiore to violate binding law."); *Marte v. Montefiore Med. Ctr.*, No. 22-CV-3491, 2022 WL 7059182, at *3-4 (S.D.N.Y. Oct. 12, 2022) ("This is exactly the type of accommodation Plaintiff requested – permission to remain in her position without being vaccinated. The only accommodation Plaintiff requested was found to be unreasonable and an undue hardship in *We The Patriots*."); *Riley v. N.Y.C. Health & Hosps. Corp.*, No. 22-CV-2736, 2023 WL 2118073, at *4 (S.D.N.Y. Feb. 17, 2023) ("The plaintiff . . . alleges that she sought to continue working unvaccinated as a nurse in direct contact with colleagues and patients. Granting this accommodation would cause the defendant the undue hardship of forcing it to violate [the State Mandate]."); *D'Cunha*, 2023 WL 2266520, at *3 ("The only accommodation D'Cunha requested was a vaccine exemption. That request, however, is foreclosed by *We the Patriots* . . . ."); *Does 1-2*, 2022 WL 4637843, at *15 ("The sole 'accommodation' the plaintiffs seek – a religious exemption from the vaccine requirement – would impose an undue hardship on the Private Defendants because it would require them to violate state law.").[8]

Plaintiffs' Title VII claim is therefore dismissed.

### B.     Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018). "Leave to amend, though liberally

---

[8] That the Onondaga County Supreme Court invalidated the State Mandate in 2023, *see Med. Pros.*, 185 N.Y.S.3d at 585-86, does not change the outcome here. First, that decision is non-binding and has not yet made its way to the New York Court of Appeals. Second, the Appellate Division promptly stayed it, allowing the State Mandate to remain in effect. Third, and more fundamentally, a 2023 ruling has no bearing on the actions of Defendants in 2021.

granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs have already amended, (*see* SAC), after having the benefit of a pre-motion letter from Defendants, (*see* ECF No. 16), and the discussion at the July 5, 2022 pre-motion conference, (*see* Minute Entry dated July 5, 2022). In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim."); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.").

Further, Plaintiffs have not asked to amend again or otherwise suggested that they are in possession of facts that would cure the deficiencies identified in this ruling. *See TechnoMarine*

*SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Olsen v. Sherry Netherland, Inc.*, No. 20-CV-103, 2022 WL 4592999, at *15 (S.D.N.Y. Sept. 30, 2022) (denying leave to amend where plaintiff did not "explain how any amendment would cure the deficiencies identified by the Court"). Indeed, because "[t]he problem[s] with [Plaintiffs'] causes of action [are] substantive," and "better pleading will not cure [them]," *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000), amendment here would be futile, *see Trombetta v. Novocin*, 414 F. Supp. 3d 625, 634 (S.D.N.Y. 2019); *see Boswell v. Bimbo Bakeries USA, Inc.*, 570 F. Supp. 3d 89, 97 (S.D.N.Y. 2021); *Roundtree v. N.Y.C.*, No. 19-CV-2475, 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (collecting cases).

Accordingly, the Court declines to grant Plaintiffs leave to amend *sua sponte*.

### IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 31), and close the case.

**SO ORDERED.**

Dated: May 15, 2023
White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.